## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LAURA GALLOWAY | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 1:24-cv-327 |
| | ) | Judge Nora Barry Fischer |
| v. | ) | |
| | ) | |
| LELAND DUDEK | ) | |
| *Acting Commissioner of Social Security* | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

## I.    INTRODUCTION

Laura Galloway ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3), seeking review of the final determination of the Commissioner of Social Security ("Defendant" or "Commissioner") denying her application for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401 *et seq.,* 1381, *et seq.* ("the Act").  This matter comes before the Court on cross motions for summary judgment.  (ECF Nos. 12, 15).  For the following reasons, Plaintiff's Motion for Summary Judgment (ECF No. 15) is denied, and Defendant's Motion for Summary Judgment (ECF No. 12) is granted.

## II.    PROCEDURAL HISTORY

Plaintiff applied for DIB and SSI on April 19, 2022.  (ECF No. 4-2 at 40).  Plaintiff's alleged disability onset date was October 1, 2021.  These claims were denied initially on September 19, 2022, and upon reconsideration on January 27, 2023.  (*Id.* at 19).  Plaintiff filed a written request for a hearing before an administrative law judge ("ALJ").  (*Id.*).  The designated ALJ, Paul

Georger, held a telephonic hearing on December 8, 2023.  (ECF No. 4-2 at 39).  Plaintiff was represented at the hearing by her then counsel, Abeba Carlan.  (*Id.*).  Jay Steinbrenner, a vocational expert, also appeared at the hearing and testified.  (*Id.* at 67-73).

In a decision dated January 31, 2024, the ALJ denied Plaintiff's claims for DIB and SSI benefits.  (ECF No. 4-2 at 29).  On February 8, 2024, Plaintiff requested review of the ALJ's decision by the Appeals Council but review was denied on October 10, 2024, making the ALJ's decision the final decision of the Commissioner.  (ECF No. 4-2 at 2-8).  Plaintiff filed her Complaint in this Court on December 3, 2024.  (ECF No. 1).  Defendant filed an Answer on February 3, 2025.  (ECF No. 4).  On March 28, 2025, Plaintiff filed a Brief in Support of Summary Judgment.[1]  (ECF No. 9).  Defendant then filed a Motion for Summary Judgment and a Brief in Support on April 30, 2025.  (ECF Nos. 12, 13).  Plaintiff filed a Reply Brief on May 14, 2025, simply incorporating the arguments in her moving brief at ECF No. 9.[2]  (ECF No. 14).  Although this Court permits sur-reply briefs, none was filed.  Hence, this matter has been fully briefed and is ripe for disposition.

## III.    STATEMENT OF FACTS

### A.    Hearing Transcript—General Background; Employment History

Plaintiff was born on September 2, 1971 and was fifty-two years old at the time of the hearing.[3]  (ECF No. 4-2 at 43).  She is unmarried and lives with her mother and daughter.  (*Id.* at 44).  Plaintiff possesses a driver's license and chooses to drive occasionally because she does not

---

[1] Plaintiff filed her Motion for Summary Judgment on June 4, 2025, and refiled her supporting brief that same day. (ECF Nos. 15 & 16).

[2] Plaintiff's Reply brief is entitled Memorandum of Law in Support of Plaintiff's Motion for Judgment on the Pleadings, even though her moving brief at ECF No. 9 & 16, is in support of summary judgment.  The Court notes that Plaintiff acquired new counsel by the time her reply brief was due.  The Court also construes the brief as advancing her position on summary judgment.

[3] The SSA regulations define "person closely approaching advanced age" as a person who is age 50-54 years old.  20 C.F.R. § 1563(d).

see well at night or in the rain. (*Id.*) She has a two-year college degree in business administration but has no vocational training. (*Id.* at 44-45; ECF No. 4-13 at 31).

Plaintiff testified that from 2018 until 2020, she worked for Ollie's Bargain Outlet managing the domestics department, and for a time, worked for Walmart. (*Id.* at 45, 47). She has not worked at all, however, since October 1, 2021. (*Id.* at 46). She explained that she has been unable to work since that time because cysts on her pancreas were flaring up, and she had a feeding tube which made it impossible to work. (*Id.* at 47). The pain in her abdomen is constant; lifting, and sometimes even walking, can make the pain worse. (*Id.* at 48). Currently, she can lift no more than 10 pounds. (*Id.* at 49). Pain medication prescribed by her doctor[4] dulls the pain but does not eradicate it. (*Id.* at 48). On a scale from 1-10, her pain level is between 4 to 6 daily. (*Id.* at 48-49). She does not have pain anywhere else besides her abdomen. (*Id.* at 47-48). Plaintiff asserts she is attempting all conservative measures before she resorts to pancreatic surgery. (*Id.* at 50).

Plaintiff further testified that she does not use a cane or a walker. She has COPD and uses an inhaler approximately three (3) times per day. She receives no mental health treatment. Sometimes, she does not feel up to personal care tasks, such as showering or washing her hair. (*Id.* at 51-52). She undertakes some household chores, but her mother and daughter help with most of them. She also has difficulties going up and down stairs. She enjoys reading but does not belong to any organizations or clubs. (*Id.* at 51).

Plaintiff's counsel then questioned her about various medical issues and how they affect her day-to-day activities. Plaintiff testified that her glaucoma is controlled with medication and prescription glasses. She has issues with concentration, such that she cannot concentrate through

---

[4] Plaintiff is prescribed hydrocodone for pain and gabapentin for neuropathy. (ECF No. 4-2 at 49). Medications listed in her application as of August 2022 include Creon; sucralfate; pantoprazole, aspirin, latanoprost; amlodipine; hydrocodone; ondansetron; albuterol; and fluticasone. (*Id.* at 50).

an entire movie.  (*Id.* at 52-54).  She further testified that when she worked at Walmart as an online grocery tech, she would need assistance about four times a week to gather or lift items.  (*Id.* at 54-55).  She stopped working at Walmart because of her feeding tube but was fired from Ollie's because of her absences for hospitalization.  (*Id.* at 56).  She cannot eat regular-sized meals, but instead eats small meals throughout the day.  (*Id.* at 59).  Plaintiff indicated that she has gastroesophageal reflux disease ("GERD"), which is controlled with medication.  (*Id.* at 60).  She has pain when sitting for more than half an hour, which she can relieve by getting up and walking around a bit.  (*Id.* at 61-62).  She has discomfort after walking for about 20 minutes, and neuropathy in her feet causes pain after standing for 20 minutes.  (*Id.* at 62).  She concluded her testimony by describing pain that she experiences in her hands, where her fingers "lock up," and she occasionally drops things.  (*Id.* at 64-65).

Next, vocational expert, Jay Steinbrenner, was called as a witness.  (*Id.* at 68-73).  Steinbrenner testified that Plaintiff previously worked as a department manager retail, skilled, with a medium exertion level.[5]

The ALJ proceeded to posit various hypotheticals to Steinbrenner.  First, the ALJ instructed him to consider whether Plaintiff could perform her past work with the following restrictions: limited to light work with occasional use of ramps and stairs; no use of ladders, ropes, or scaffolds; occasional balancing, stooping, kneeling, crouching, and crawling; no exposure to unprotected heights; frequent exposure to moving mechanical parts; occasional exposure to humidity and wetness; occasional exposure to dust, odors, fumes, and pulmonary irritants; occasional exposure to extreme cold and extreme heat.  Steinbrenner responded that she could not.  (*Id.* at 69).

---

[5] In characterizing Plaintiff as a department manager retail, Steinbrenner referenced: "DOT number 299.137-010. Skilled SVP of 7, and that's listed as medium."  (ECF No. 4-2 at 69).

Second, the ALJ instructed Steinbrenner to consider an individual with the same age, and work experience as Plaintiff, a high school education, and with the same residual functional capacity as set forth in the first hypothetical. Steinbrenner answered that the hypothetical individual could perform the jobs of cashier II, normally associated with smaller retail environments; stock checker, which in today's labor market is utilizing a bar code scanner; and private sector mail room clerk—all considered unskilled, light work. (*Id.* at 69-70).

Third, the ALJ instructed Steinbrenner to assume the claimant would be limited to sedentary work with no overhead reaching with the left arm; no use of ramps and stairs; no use of ladders, ropes, or scaffolds; no stooping or crouching; no exposure to humidity and wetness; no exposure to dust, odors, fumes, or pulmonary irritants; and no exposure to extreme cold or extreme heat. She would need a sit-stand option, sitting for 15 minutes, then standing for 15 minutes throughout her shift, staying on task throughout that period. Steinbrenner concluded that there are unskilled jobs in the national economy that the claimant could perform, including telephone solicitation; telephone solicitor; and specialist raising money for charities. This work is considered unskilled and sedentary. (*Id.* at 70-71).

The ALJ's final hypothetical depicted an individual with all elements of the above hypothetical, except the claimant would be off task up to 20 percent of the workday, and absent two or more days per month. Steinbrenner concluded that there would be no jobs the claimant could perform. (*Id.* at 71).

Plaintiff's counsel then questioned Steinbrenner as to whether there would be sedentary jobs available if the individual could only do occasional fingering and handling. (*Id.* at 72). Steinbrenner responded that if the individual could utilize a mouse with either upper extremity frequently, then he/she could do the job of telephone solicitor. (*Id.*). Further, if an individual

occasionally needs help from co-workers, that would not be consistent with competitive employment. (*Id.*).  Finally, when questioned about a claimant who would need a 15-minute break every hour, Steinbrenner responded that these breaks would degrade productivity to unacceptable levels. (*Id.* at 72-73).

**B.  Medical Treatment History**

In 2016, Plaintiff was diagnosed with chronic pancreatitis secondary to alcohol abuse. (ECF No. 4-20 at 167).  She has required a feeding tube four times, once in 2017, and the second time from September 2021 to November 2021.  Before the third tube placement, she was admitted to Warren General Hospital in February 2022, and three days later was discharged and advised to follow-up with a gastrointestinal specialist as an outpatient.  A CT scan revealed no inflammation surrounding the pancreas and a small cystic area within the head of the pancreas.  (ECF No. 4-18 at 17).  In late February 2022, she presented to UPMC Hamot with nausea and abdominal pain due to chronic pancreatitis, for which a feeding tube was used a third time.  She was discharged on March 2, 2022 with no restrictions on her physical activities.  (ECF Nos. 4-18 at 77-79; 4-20 at 167).  During an outpatient visit on April 7, 2022, the feeding tube was re-started.  (ECF No. 4-18 at 73).  It was removed on June 9, 2022, and she did not need it thereafter.  (ECF No. 4-20 at 135).  She reported feeling better and understood that she was to follow a low-fat diet.  (*Id.*).

In July 2022, Plaintiff saw her primary care provider, Dr. Tootell.  Her cysts had shrunk, although they had not resolved, but no surgery was indicated.  She reported that her pain pills offered some relief.  (ECF No. 4-20 at 8).

On August 4, 2022, Plaintiff underwent a consultative examination with Dr. Melita Konecke.  Plaintiff reported that she has been sober for three and a half years and was hospitalized around 28 times secondary to her pancreatitis since her 2016 diagnosis.  (ECF No. 4-20 at 167).

She has had asthma since she was a child but has not required hospitalizations or emergency room visits. She uses an inhaler daily, and Flonase during the spring for allergies. (*Id.*). She was diagnosed in 2018 with glaucoma which she treats with eye drops and has a history of high blood pressure which is controlled with medication. In 2020, she was diagnosed with celiac disease and watches her diet. (*Id.*). She reported that she lives with her mother and 23-year-old daughter and does not need help at home. She is licensed to drive and operates a motor vehicle, she cooks twice weekly, cleans weekly, does laundry weekly, and once to twice a week she shops. She is able to shower and dress herself. She reported that she watches TV, listens to the radio, reads, participates in online social media and socializes with friends. (ECF No. 40-20 at 168). Dr. Konecke opined, in part, that Plaintiff could sit for six hours, stand for five hours, and walk for four hours total in a workday; lift and carry up to ten pounds frequently and twenty pounds occasionally; and continuously reach, handle, finger, feel, and push/pull. (ECF No. 4-20 at 172- 74). She further indicated that Plaintiff's impairments did not affect her vision. (ECF No. 4-20 at 175).

Plaintiff was evaluated by gastroenterologist, Dr. Brian Yin Ng on September 21, 2022. (ECF No. 4-20 at 191). He reported that Plaintiff was doing well, and maintaining a low fat, gluten free diet. He noted that her last feeding tube was removed, and that the CT scan done in June showed interval resolution of fluid collection. He further indicated that her reflux is controlled with medication. (*Id.*).

On November 1, 2022, Plaintiff reported to her primary care physician, Dr. Tootell, with greater pain and nausea. (ECF No. 4-21 at 12). She indicated that the pain medication helped somewhat, but the hydrocodone was lasting only four (4) hours, and that her pain level was between 2 to 6 on a scale from 1 to 10. She requested an increase in dosage. (*Id.*) Examination revealed moderate tenderness of the right upper quadrant of Plaintiff's abdomen. Otherwise,

findings were normal. (*Id.*) He noted that "[p]seudocyst shrinking somewhat." (*Id.*) Dr. Tootell

adjusted her medication. (*Id.* at 15).

On March 16, 2023, Plaintiff again saw Dr. Tootell for abdominal pain and nausea which

worsened in the past week. She requested a hydrocodone refill. He also noted that Plaintiff's

trigger finger/right thumb issue had resolved with a cortisone injection. (ECF No. 4-21 at 26).

Likewise, on May 23, 2023, Plaintiff presented to Dr. Tootell with the same complaint. He noted

that pain medication is helping. Physical examination demonstrated moderate tenderness of the

upper right quadrant of her abdomen with no rebounding or guarding. (ECF No. 4-21 at 22-24).

At a follow-up visit with Bayfront Digestive disease on September 13, 2023, Plaintiff reported that

she experienced upper abdominal pain but found relief with pain medication. (ECF No. 4-22 at

21).

A state agency medical consultant, Dr. Stephanie Prosperi, reviewed Plaintiff's medical

records on September 19, 2022, and opined that Plaintiff could lift up to twenty pounds

occasionally and ten pounds frequently; stand and/or walk for about six hours in a workday; sit for

about six hours in a workday; and frequently perform most postural activities, except she could

never crawl or climb ladders, ropes, or scaffolds. She further opined that Plaintiff had no visual

limitations. (ECF No. 4-13 at 7-8). Dr. Toni Parmelee reviewed Plaintiff's updated record on

January 27, 2023 and confirmed Dr. Prosperi's assessment. (ECF No. 4-13 at 27-30).

Plaintiff's medical records were also reviewed by state agency mental consultant Dr. Roger

K. Fretz, Ph.D. on September 2, 2022, who opined that she did not have any severe mental health

issues. (ECF No. 4-13 at 3-6). Plaintiff's updated medical records were later evaluated on January

5, 2023 by Dr. Valorie Lynn Rings, Psy.D., and she likewise found that Plaintiff lacked a severe

mental health impairment. (ECF No. 4-13 at 23-26).

Finally, on December 4, 2023, Plaintiff's primary care physician, Dr. Tootell, completed a Primary Source Statement. (ECF No. 4-21 at 87-94). He indicated that Plaintiff was capable of performing a low stress job. (*Id.* at 88). He further opined that Plaintiff could sit and stand/walk for less than two hours in a workday; needed unscheduled breaks during an 8-hour workday and would be absent more than four days per month; could only rarely lift 10 pounds; and could never twist, stoop, crouch, climb ladders or stairs. (*Id.* at 88-94).

## IV.    STANDARD OF REVIEW

To be eligible for Social Security benefits under the Act, a claimant must demonstrate that he or she cannot engage in "substantial gainful activity" because of a medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of at least twelve months. 42 U.S.C. §423(d)(1)(A); *Brewster v. Heckler,* 786 F.2d 581, 583 (3d Cir. 1986). When reviewing a claim, the ALJ must utilize a five-step sequential analysis to evaluate whether a claimant has met the requirements for disability. 20 C.F.R. §§ 404.1520, 416.920. The ALJ must determine: (1) whether the claimant is currently engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or a combination of impairments that is severe; (3) whether the medical evidence of the claimant's impairment or combination of impairments meets or equals the criteria listed in 20 C.F.R., Pt. 404, Subpt. P, App'x 1; (4) whether the claimant's impairments prevent him from performing his past relevant work; and (5) if the claimant is incapable of performing his past relevant work, whether he can perform any other work which exists in the national economy. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *see Barnhart v. Thomas*, 540 U.S. 20, 24–25 (2003). If the claimant is determined to be unable to resume previous employment, the burden shifts to the SSA/Commissioner at Step 5 to prove that, given claimant's mental or physical limitations, age,

education, and work experience, he or she is able to perform substantial gainful activity in jobs available in the national economy. *Doak v. Heckler*, 790 F.2d 26, 28 (3d Cir. 1986).

Judicial review of the SSA's final decision on disability claims is provided by statute and is plenary as to all legal issues. 42 U.S.C. §§ 405(g)[6], 1383(c)(3)[7]. *See also Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 431 (3d Cir. 1999). The SSA's factual findings are judicially reviewable to determine whether they are supported by substantial evidence, and the court reviews the record as a whole. 42 U.S.C. § 405(g); 5 U.S.C. § 706. *See also Burns v. Barnhart*, 312 F.3d 113, 118 (3d Cir. 2002); *Kent v. Schweiker*, 710 F.2d 110 (3d Cir. 1983). Substantial evidence is defined as evidence that would satisfy a "reasonable mind" as adequate to support a conclusion. *Ventura v. Shalala*, 55 F.3d 900, 901 (3d Cir. 1995) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). As articulated by some courts, including the Supreme Court, the ALJ must build an accurate and logical bridge between the evidence and his conclusions:

> An agency action qualifies as "arbitrary" or "capricious" if it is not "reasonable and reasonably explained." *FCC v. Prometheus Radio Project*, 952 U.S. 414, 423 (2021). In reviewing an agency's action under that standard, a court may not "'substitute its judgment for that of the Agency.'" *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 513 (2009). But it must ensure, among other things, that the agency has offered "a satisfactory explanation for its action[,] including a rational connection between the facts found and the choice made." *Motor Vehicle Mfrs. Assn. of United States, Inc. v. State Farm Mut. Automobile Ins. Co.*, 463 U.S. 29, 43 (1983)

---

[6] Section 405(g) provides in pertinent part:

> Any individual, after any final decision of the [Commissioner] made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action ... brought in the district court of the United States for the judicial district in which the plaintiff resides, or has his principal place of business.

[7] Section 1383(c)(3) provides in pertinent part:

> The final determination of the Commissioner of Social Security after a hearing under paragraph (1) shall be subject to judicial review as provided in section 405(g) of this title to the same extent as the Commissioner's final determinations under section 405 of this title.

> (internal quotation marks omitted).  Accordingly, an agency cannot
> simply ignore "an important aspect of the problem."  *Ibid.*

*Ohio v. EPA*, 603 U.S. 279, 292-93 (2024) (parallel citations omitted); *see also Gamret v. Colvin*, 994 F. Supp. 2d 695, 698 (W.D. Pa. 2014).

If the Commissioner's findings of fact are supported by substantial evidence, they are conclusive.  42 U.S.C. § 405(g); *Richardson,* 402 U.S. at 390.  As the Supreme Court reiterated in *Ohio v. EPA*, 603 U.S. at 292, when considering a case, a district court cannot conduct a *de novo* review of the Commissioner's decision nor re-weigh the evidence of record; the court can only judge the propriety of the decision in reference to the grounds invoked by the Commissioner when the decision was rendered.  *Palmer v. Apfel*, 995 F. Supp. 549, 552 (E.D. Pa. 1998); *S.E.C. v. Chenery Corp.*, 332 U.S. 194, 196-97 (1947).  Further, the court will not affirm a determination by substituting what it considers to be a proper basis.  *Chenery*, 332 U.S. at 196-97.

## V.    ANALYSIS

The ALJ denied Plaintiff both DIB and SSI benefits.  (ECF No. 44-2 at 29).  He performed all five steps of the sequential evaluation process in analyzing Plaintiff's alleged physical impairments.  (*Id.* at 21-29).  At Step 1, the ALJ found that Plaintiff met the insured status requirements of the Social Security Act through September 30, 2023.  (*Id.* at 21).  Further, the ALJ determined that Plaintiff had not engaged in substantial gainful activity ("SGA") since Plaintiff's alleged onset date of October 1, 2021.  (*Id.*).  At Step 2, the ALJ held that Plaintiff had the following severe impairments: chronic pancreatitis and asthma.  (*Id.*).  The ALJ concluded, however, that Plaintiff's other alleged impairments—GERD, celiac disease, hypertension, dry eye syndrome, trigger finger and hypertensive retinopathy—were not severe as they did not cause more than a minimal limitation in Plaintiff's ability to perform basic work activities as required by SSR 85-28. (*Id.* at 22).

In concluding that these impairments were not severe, the ALJ considered medical records indicating that these conditions have been well managed with medication, diet changes or other routine and conservative treatments. *See* ECF Nos. 4-8 at 2-13; 4-19 at 12-43, 60-162; 4-20 at 167-183; 204-210; 4-21 at 10-17. He stated that "[t]he longitudinal evidence in the record indicates" that these nonsevere impairments "do not impose more than minimal limitations in the claimants ability to engage in basic work activities . . . ." (ECF No. 4-2 at 22). The ALJ noted that even though some of Plaintiff's impairments are not severe, he considered them in determining Plaintiff's residual functional capacities. (*Id.*).

The ALJ further found that although Plaintiff reported a history of an anxiety disorder and alcohol use, Plaintiff has no severe mental health impairment. Finding the opinions of reviewing state agency mental consultants, Dr. Fretz and Dr. Rings, supported by the record and consistent with one another, the ALJ concluded that Plaintiff has no limitation in understanding, remembering, or applying information, no limitation in interacting with others, a mild limitation in concentrating, persisting, or maintaining pace, and no limitation in adapting or managing oneself. *See* ECF No. 4-13 at 3-11, 13-21, 23-31, 33-41.

At Step 3, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the impairments listed at 20 CFR Part 404, Subpart P, Appendix 1, Listing 5.00 (Digestive Disorders), because the record did not contain sufficient evidence of the criteria provided in the regulation. (ECF No. 4-2 at 22-23). The ALJ then explained that Plaintiff's asthma did not meet the criteria of Listing 3.03 and noted that the record reflects no hospitalizations, and that with prescribed treatment, Plaintiff's asthma is well controlled. (ECF No.4-2 at 23).

At Step 4, the ALJ assessed Plaintiff with the following residual functional capacity ("RFC"):

> [C]laimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she can have occasional use of ramps and stairs, no use of ladders, ropes or scaffolds, with occasional balancing, stooping, kneeling, crouching, and crawling. She can never work at unprotected heights, can have frequent exposure to moving mechanical parts, occasional exposure to humidity and wetness, occasional exposure to dust, odors, fumes and pulmonary irritants, and occasional exposure to extreme cold and extreme heat.

(*Id.*). The ALJ concluded that Plaintiff is unable to perform any of her past work. He also determined that in light of her residual functional capacity, age, education, and work experience, Plaintiff is capable of making a successful adjustment to other work that exists in significant numbers in the national economy. (*Id.* at 28-29). In sum, the ALJ found that Plaintiff had not been disabled under the Act from the alleged disability onset date of October 1, 2021, to the date of his decision on January 31, 2024. (*Id.* at 29).

## A.    The ALJ's Residual Functional Capacity Assessment

Plaintiff sets forth several arguments on appeal. At the outset, she argues that the ALJ failed to consider relevant evidence which resulted in an incorrect RFC finding. By way of example, she directs the Court to the ALJ's characterization of Plaintiff's pancreatitis as "chronic," emphasizing that he did not consider that her pancreatitis was complicated by a cyst. (ECF No. 16 at 6-8).

The ALJ thoroughly discussed the medical records relating to Plaintiff's pancreatitis, including the fact that it was accompanied by a cyst. (ECF No. 4-2 at 24-25). Medical records from her treating physician reflect that by July 18, 2022, her cysts had shrunk in size, and no surgery was indicated at that time. (ECF No. 4-20 at 8); *see also* November 1, 2022, Tootell

Report (ECF No. 4-21 at 12) ("Pseudocyst shrinking somewhat.").  The ALJ noted that medical records further reflected that her feeding tube treatments were temporary and that her pain and nausea are managed with medication.  (ECF No. 4-2 at 24).  The ALJ fully considered Plaintiff's pancreatitis and accompanying cyst as follows:

> More specifically, the evidence shows that the claimant has had treatment for chronic pancreatitis with a cyst, and she reported and the record shows she has required a feeding tube at points. For example, she had one placed in 2017, but more recently from September 2021 to November 2021, and then again in February 2022 to June 2022, but not again since that time. An MRI from August 31, 2021 was overall normal with the exception of a 1cm cystic appearing mass at the head of pancreas and incidental hepatic cysts. She reported abdominal pain in September 2021, and a CT scan showed acute on chronic pancreatitis with pseudocysts and inflammation mostly around the pancreatic head and uncinate prates which has not significantly changed from June. She was consulted for an EGD and postpyloric feeding tube, and it was reported that tube feeds were at goal, and she reported minimal abdominal pain during the hospital stay and she was discharged home and her body mass index was 20. An MRI in September 2021 showed findings consistent with a groove pancreatitis with several likely pancreatic pseudocysts in the pancreatic head, and hepatic steatosis. Into October 2021, an updated EGD was normal.
>
> Into March 2022, she was again hospitalized for chronic pancreatitis and a nasogastric tube was again placed and tube feeds started. Her BMI was 21.8 and the balance of the examination was normal including full strength in all extremities on musculoskeletal examination. An April 2022 EGD was normal and in May 2022 it was noted that a J tube was placed, but that it would likely be removed at the end of May, and her BMI was 22.42. She had moderate tenderness in the right upper quadrant but otherwise an examination was normal. Into June 2022, it was noted that on CT the previously seen complex cystic density associated with the duodenum and pancreatic head appears to have largely resolved and replaced with a small area of low attenuation which may represent scarring; and a small cystic and calcific density associated with the pancreatic head was not changed from previous. As of June 7, 2022, the claimant reported she was feeling much better, and she was eager to have the feeding tube removed and it was with plan for follow up in three to four months. On examination her gait was steady with proper balance, and she could freely move all extremities and

laboratory values were within normal limits. Into July 2022 she was examined with her primary care provider and findings were generally stable.

(ECF No. 4-2 at 24-25) (internal citations omitted).

Accordingly, the ALJ limited Plaintiff "to work at the light exertional level with additional postural and environmental restrictions . . . ." (*Id.* at 24). The Court finds that the ALJ's analysis of Plaintiff's pancreatitis and its relationship to the RFC assessment is supported by substantial evidence.

Next, Plaintiff directs the Court to the ALJ's treatment of Plaintiff's ocular impairments, listing all diagnoses from her Community Eye Care Specialists records. (ECF No. 16 at 8-10). Plaintiff contends that the ALJ was required to discuss all diagnoses before fashioning his RFC finding.[8] (ECF No. 16 at 8-10). These medical records reflect Plaintiff's treatment from January 25, 2022 through July 13, 2023. (ECF No. 4-21 at 56-77). Plaintiff's last treatment record reflects only dry eye syndrome for which artificial tears were recommended. Lid hygiene was discussed along with allergic conjunctivitis for which medication was also prescribed. Notes reflect that Plaintiff "may be allergic to cat." (ECF No. 4-21 at 58). Glaucoma tests were stable, and cataracts were mild with minimal impact on vision. The importance of controlling vascular risk factors was discussed and regular follow-ups with Plaintiff's PCP were suggested. (*Id.*). These records, however, do not suggest any functional limitations. Instead, Plaintiff's activities of daily living, along with the reports of Drs. Prosperi and Parmelee, indicate that Plaintiff has no visual limitations. *See* ECF No. 4-13 at 8, 28; *see also* Consultative Examination of Dr. Konecke, (Activities of Daily Living), ECF no. 4-20 at 168 ("She does not need help at home. She is licensed

---

[8] Plaintiff lists and briefly describes these diagnoses as follows: moderate presbyopia (difficulty focusing on near objects); nuclear sclerosis (cloudiness, hardening and yellowing of central region of lens resulting in blurry vision), stenosis of lacrimal punctum epiphora (excessive tearing); glaucomatous atrophy (cupping) of the optic nerve; and hypertensive retinopathy. (ECF No. 16 at 2).

to drive.  She does operate a motor vehicle.  She cooks twice a week, cleans weekly, laundry weekly, and once to twice a week she shops. . . . She watches TV, . . . reads, online social media, and socializes with friends.").  Similarly, in a vision questionnaire dated May 2022, Plaintiff indicated that with corrective lenses, she is able to drive a car, has no difficulty navigating her home or other settings, is able to read print such as mail, newspapers, and computer screens.  She also reported that she has not changed or stopped certain activities due to her vision.  (ECF No. 4-17 at 40-41).[9]  As noted by the United States Court of Appeals for the Third Circuit, a diagnosis alone does not demonstrate a disability.  *Foley v. Comm'r of Soc. Sec.*, 349 F. App'x 805, 808 (3d Cir. 2009) (citing *Petition of Sullivan*, 904 F.2d 826, 845 (3d Cir. 1990)).  Rather, Plaintiff is required to show that her visual conditions significantly limit her physical or mental ability to do basic work activities.  *See* 20 C.F.R. §§ 404.1520(c), 404.1521(a).  Plaintiff has failed to do so.  Hence, the ALJ's RFC analysis as it relates to Plaintiff's ocular issues is supported by substantial evidence.

### B.    Closed Period of Disability

Plaintiff further contends that the ALJ failed to explicitly deny that she was entitled to a closed period of disability due to her symptoms and treatment from February 2022 through May 2023.  (ECF No. 16 at 12-15).  Relatedly, she argues that medical records demonstrate that there was at least a 12-month period during this time where Plaintiff would have been unable to work.  (*Id.*)

Recently, the United States District Court for the Middle District of Pennsylvania confronted a similar issue in *Bradley v. Dudek*, Civil No. 1:24-cv-541, 2025 WL 964440, at **7-9 (M.D. Pa. Mar. 31, 2025).  There, remand was appropriate because the ALJ did not consider all

---

[9] Plaintiff argues that this vision questionnaire is "stale" because it was completed one month before her ocular issues "arose."  (ECF No. 16 at 11).

aspects of the claimant's medical records, but only those where the claimant showed improvement. In reaching its conclusion, the court, collecting cases, noted the following as to whether remand is appropriate on a particular set of facts:

> An ALJ's failure to consider whether a claimant is entitled to benefits for a closed period between the alleged onset date and the date of the ALJ's decision is an error that may—or may not—require remand. *Compare Saunders v. Kijakazi*, 6 F.4th 1, 5 (D.C. Cir. 2021) (reversing and remanding to the District Court with instructions to remand to the Commissioner given that the ALJ failed to consider a medical opinion that was material to whether the claimant "was at least entitled to disability benefits during the twelve-month period following [her] fall"), *Tylecia M. o/b/o C.O. v. O'Malley*, No. 21 CV 2392, 2024 WL 1050177, at *10 (N.D. Ill. Mar. 11, 2024) (remanding for the ALJ to consider whether the claimant was disabled for a closed period and noting and citing cases for the proposition that "[c]ourts routinely remand in this context when the ALJ fails to discuss whether a closed period was considered"), *Simmons v. Comm'r of Soc. Sec. Admin.*, No. 8:19-CV-1958-T-MCR, 2020 WL 5627464, at *3 (M.D. Fla. Sept. 21, 2020) (concluding that in light of the medical records in that case, the ALJ's failure to address whether the claimant was entitled to closed period of disability was an error requiring remand), *and Calhoun v. Colvin*, 959 F. Supp. 2d 1069, 1075–76 (N.D. Ill. 2013) (remanding for the ALJ to "specifically evaluate whether Calhoun was disabled for any consecutive 12 month period, even if the ALJ finds that Calhoun is not currently disabled"), *with Vizcarrondo o/b/o J.J.V. v. Kijakazi*, No. 3:20-CV-02367, 2022 WL 3142345, at *4 n.2 (M.D. Pa. Aug. 5, 2022) (rejecting argument that ALJ erred by failing to award benefits for a closed period of disability where "[i]n making [ ]his determination, the ALJ considered the entire record, not just evidence from J.J.V.'s period of improvement"), *and Reed v. Colvin*, No. 1:14-CV-080 JD, 2015 WL 4921614, at *7 (N.D. Ind. Aug. 18, 2015) (concluding that although [t]he ALJ did not expressly consider whether the claimant was entitled to a closed period of disability that ALJ implicitly did so and given that the ALJ relied substantially on records from within the purported closed period, that ALJ concluded that the claimant was not disabled [f]or a period of 12 months).

*Bradley*, 2025 WL 964440, at *8; *see also Atwood v. Astrue*, Civil No. 5:11CV002, 2011 WL 7938408, at *6 (W.D.N.C. Sept. 28, 2011), *cited in, Allen v. Colvin*, Civil Action No. 16-2557,

2017 WL 2399591, at *5 (D. Md. June 1, 2017) (Implicit in an ALJ's decision that claimant was not disabled is that claimant was not entitled to a closed period of disability at any time).

Here, Plaintiff does not meet the standard for a remand. Although medical records establish that Plaintiff experienced symptoms and difficulties, the facts found by the ALJ support his conclusion that Plaintiff was not disabled. As discussed at length by the ALJ, Plaintiff's use of feeding tubes was intermittent, never lasting for a continuous twelve-month period. Her pain and nausea were controlled with medication. (ECF No. 4-2 at 24). Although she experienced setbacks between February 2022 and May 2023, her condition improved in June 2022. (ECF No. 4-20 at 135). In July 2022, her primary care physician found that she was stable, her cyst had shrunk, and no surgery was indicated. (ECF No. 4-20 at 8). In September 2022, she was evaluated and reported that she was "doing well" and "being maintained on a low fat, gluten free diet." (ECF No. 4-20 at 191). Thus, the record does not reflect a 12-month closed period of disability between February 2022 and May 2023.

The Court thus holds that the ALJ's findings are supported by substantial evidence, Plaintiff is not entitled to a closed period of disability and remand is inappropriate.

### C.    The ALJ's Evaluation of Medical Opinions

Plaintiff also argues that the ALJ failed to properly evaluate the medical opinion evidence in that he failed to address how Plaintiff's pain was connected to her pancreatitis and accompanying cyst. (ECF No. 16 at 16-19). She specifically complains that the ALJ rejected her treating physician's most recent opinion, Dr. Tootell's Primary Source Statement dated December 4, 2023 (ECF No. 4-21 at 87-94).

In 2017, the Commissioner modified Social Security regulations such that controlling weight is no longer afforded to any opinion. *See* 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Rather,

the ALJ now evaluates the persuasiveness of each medical opinion and each prior administrative medical finding. *See id.* The following five factors determine persuasiveness:

> (1) supportability; (2) consistency; (3) relationship with the claimant, including length, purpose, and extent of the treatment relationship, as well as frequency of examinations and whether the medical source examined the claimant firsthand; (4) specialization; and (5) other factors, like "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements."

*Hill v. Kijakazi*, Civil Action No. 22-cv-145, 2023 WL 6626125, at *6 (E.D. Pa. Oct. 11, 2023) (discussing and quoting 20 C.F.R. §§ 404.1520c(c), 416 920c(c)). Supportability and consistency are the most important factors, and unlike the remaining factors, must be discussed. *Id.* Supportability concerns the evidence and explanations presented by a medical source such that the more relevant the objective medical evidence and supporting explanations are, the more persuasive the medical opinions or prior administrative medical findings will be. *Hill*, 2023 WL 6626125 at *7, *8 (citing 20 C.F.R. §§ 404.1520c(c)(1)-(2), 416.920c(c)(1)-(2)). Consistency concerns an evaluation of the "evidence from other medical sources and nonmedical sources . . . ." *Id.* Similarly, the more consistent the evidence from these sources, the more persuasive the medical opinions or prior administrative medical findings will be. *Id.*

In this Court's estimation, the ALJ considered the supportability and the consistency of the medical opinions and prior administrative medical findings in the record. He concluded that Dr. Tootell's December 4, 2023 Primary Source Statement was not consistent with record evidence including Plaintiff's own reports of her activities of daily living, and her reports that pain medications were helpful. He also found that Dr. Tootell's conclusions concerning postural maneuvers were inconsistent with Plaintiff's own reports, and that his opinions about manipulative limits were wholly unsupported by the record, as well as Plaintiff's own reports in various

treatment records. (ECF No. 4-2 at 27). He further emphasized that the Primary Source Statement was internally inconsistent, noting that Tootell's checkmark indicating Plaintiff would not need to walk around during an 8-hour workday was inconsistent with his checkmarks that she could only sit/stand/walk for less than two hours in an 8-hour workday. (*Id.*). Finally, in determining that his December 4, 2023 Primary Source Statement was not persuasive, the ALJ noted that Dr. Tootell's notation that Plaintiff would be absent four days per month is unsupported and makes no reference to any supportive or causative symptoms. (*Id.*).

Plaintiff maintains that after November 1, 2022, Dr. Tootell's opinion was the sole medical opinion in the file because the other State Agency opinions and consultative opinions were "stale." That is, the ALJ had a duty to more fully develop the record. (ECF No. 16 at 17).

The record evidence, however, contains medical reports generated by Bayfront Digestive Disease dated January 11, 2023; April 17, 2023; June 1, 2023; June 8, 2023; June 9, 2023; July 11, 2023; July 25, 2023; August 1, 2023; September 13, 2023; and October 16, 2023. (ECF No. 4-22 at 13-124). The obligation to develop the record "is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." *Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001), *cited in Boone v. Barnhart*, 353 F.3d 203, 208 n.11 (3d Cir. 2003); *see also Ventura v. Shalala*, 55 F.3d 900, 902 (3d Cir. 1995).

Moreover, the September 19, 2022 opinion of state agency medical consultant, Dr. Stephanie Prosperi, was reviewed by Dr. Toni Parmelee on January 27, 2023, who confirmed Dr. Prosperi's assessment. (ECF No. 4-13 at 27-30). In her review, she considered "[m]edical evidence not available at the time of the first determination[,]" and "evaluated and incorporated" the updated medical evidence "into the present determination of limitations." (ECF No. 4-13 at 30).

Here, the Court believes that recent medical records and state agency consultative opinions provided an adequate basis for the ALJ's evaluation. Further development of the record was unnecessary. *See Mayes*, 276 F.3d at 459-60. The RFC fashioned by the ALJ is consistent with and supported by the reports of treating, examining and consultative sources in the medical records. As such, the Court concludes that the ALJ's consideration of all of the medical opinions is supported by substantial evidence.

### D. Consideration of Plaintiff's Activities of Daily Living

Plaintiff next contends that the ALJ improperly considered her activities of daily living in determining that they were inconsistent with a finding of disability under the Act. She argues that her ability to perform some minimal activities of daily living do not support her ability to engage in full time work. (ECF No. 16 at 19-21). This argument challenges the ALJ's determination at step 4 of the sequential analysis that Plaintiff has the RFC to perform light work subject to some limitations. 20 C.F.R. § 404.1545(a)(1), (3).

An ALJ is required to consider the number and type of activities in which she engages when assessing her RFC. *Burns v. Barnhart*, 312 F.3d 113, 129-30 (3d Cir. 2002). The ALJ, however, did not consider Plaintiff's activities of daily living in isolation. Rather, he considered numerous factors including facts and opinions contained in the records of treating and examining physicians, as well as reports of state agency medical consultants. *See* 20 C.F.R. § 404.1529(c) ("In evaluating the intensity and persistence of your symptoms, we consider all of the available evidence from your medical sources and nonmedical sources about how your symptoms affect you."). Here, considering all the evidence, the ALJ opined that Plaintiff's activities were "not as limited to the extent one would expect, given the complaints of disabling symptoms and limitations." (ECF No. 4-2 at 26). The ALJ continued:

> The claimant reported she lives with her mother and 23-year-old daughter and that she does not need help at home. She is licensed to drive. She does operate a motor vehicle. She reported she cooks twice a week, cleans weekly, laundry weekly, and once to twice a week she shops. She reported she is able to shower and dress herself. She reported she watches TV, listens to the radio, reads, online social media, and socializes with friends. This range of activities outweighs the degree of disability as alleged by the claimant, as it is not inconsistent with the residual functional capacity as determined in this decision.

(ECF No. 4-2 at 26 (internal citations omitted)).

Consideration of Plaintiff's activities of daily living in conjunction with all other record evidence, was entirely proper. *See* 20 C.F.R. § 404.1529(c). To this end, the ALJ's RFC determination was based on the medical evidence relating to her impairments, as well as her activities of daily living. (ECF No. 4-2 at 23). The Court thus finds that the ALJ's analysis of Plaintiff's activities of daily living is supported by substantial evidence in the record.

### E. Plaintiff's Testimony

Plaintiff's final contention is that if the ALJ had credited Plaintiff's testimony, he would have concluded that she is disabled. (ECF No. 16 at 21-24). Plaintiff testified, among other things, that she has abdominal pain daily and is never pain-free. Her pain worsens with lifting and sometimes when walking. She indicated that medication dulls the pain. On a scale of one to 10, she stated that her daily pain is between 4 to 6. (ECF No. 4-2 at 48-49). She suffers from nausea daily but testified that her medication affords her relief for the entire day. (*Id.* at 58). She also related that it is painful to walk for more than 20 minutes due to the neuropathy in her feet. (*Id.* at 62). Her daughter does the shopping and most chores around the house, but she will assist her daughter once or twice a week with the household chores and will accompany her to the store if it is a short trip. (*Id.* at 62-63). She maintains her driver's license but will not drive at night or if it's raining. (*Id.* at 44, 64).

Although statements from the Plaintiff concerning her symptoms must be carefully considered, the ALJ is not required to credit them. *See* 20 C.F.R. § 404.1529 (c)(4) ("We will consider your statements about the intensity, persistence, and limiting effects of your symptoms, and we will evaluate your statements in relation to the objective medical evidence and other evidence, in reaching a conclusion as to whether you are disabled. We will consider whether there are any inconsistencies in the evidence and the extent to which there are any conflicts between your statements and the rest of the evidence, including your history, the signs and laboratory findings, and statements by your medical sources or other persons about how your symptoms affect you."). *See also* SSR 16-3p, 2016 WL 1119029, at *4 (Mar. 16, 2016) ("In considering the intensity, persistence, and limiting effects of an individual's symptoms, we examine the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record."); *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 363 (3d Cir. 2011) (ALJ had substantial evidence to conclude that claimant was not credible regarding the intensity and extent of her limitations.). After carefully considering the entire record, the ALJ concluded that Plaintiff's statements concerning the intensity, persistence and limiting effects of her symptoms were not entirely consistent with the medical evidence and other evidence of record:

> As for the claimant's statements about the intensity, persistence, and limiting effects of . . . her symptoms, they are inconsistent because the claimant's allegations as to limitations generally outweigh the objective evidence. While the claimant has had difficulties with pain and required a feeding tube at points, these were temporary treatments which were reversed and she reports that currently she is stable and her pain and nausea are managed with medication. Nevertheless, I have restricted the claimant to work at the light exertional level with additional postural and environmental restrictions which consider and accommodate her severe

impairments, but greater limitations are not consistent with the evidence.

(ECF No. 4-2 at 24). "Inconsistencies in a claimant's testimony or daily activities permit an ALJ to conclude that some or all of the claimant's testimony about her limitations or symptoms is less than fully credible." *Garret v. Comm'r of Soc. Sec.*, 274 F App'x 159, 164 (3d Cir. 2008); *John C. v. Kijakazi*, 1:20-cv-20442, 2023 WL 4446954, at *7 (D.N.J. July 11, 2023) (citing *Van Horn v. Schweiker*, 717 F.2d 871, 873 (3d Cir. 1983); *Miller v. Comm'r of Soc. Sec.*, 710 F. App'x 130, 134 (3d Cir. 2017) ("[A]n ALJ has wide discretion to weigh the claimant's subjective complaints, and may discount them where they are unsupported by other relevant evidence.")). The ALJ's opinion reflects that he evaluated all record evidence, including the records of treating and examining physicians, as well as reports of state agency medical consultants in assessing Plaintiff's testimony. Accordingly, it was appropriate for the ALJ to discount any testimony that was contradicted by medical evidence or Plaintiff's own statements. *See Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 122 (3d Cir. 2000) (allegations of pain must be consistent with objective medical evidence and an ALJ must explain the reasons for rejecting such testimony). His evaluation of Plaintiff's testimony is supported by substantial evidence.

**VI.    CONCLUSION**

Based upon the foregoing, the ultimate decision by the ALJ to deny benefits is supported by substantial evidence of record. Reversal or remand of the ALJ's decision is inappropriate. Accordingly, Plaintiff's Motion for Summary Judgment (ECF No. 15) is denied, Defendant's Motion for Summary Judgment (ECF No. 12) is granted, and the decision of the ALJ is affirmed. Appropriate Orders follow.

*s/Nora Barry Fischer*
Nora Barry Fischer
Senior U.S. District Judge

Dated: July 18, 2025
cc/ecf: All counsel of record